UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICHAEL VANDEUSEN,         :
   Plaintiff,            :
                          :
v.                         : Civil No. 3:17CV523 (AWT)
                          :
NANCY A. BERRYHILL,        :
ACTING COMMISSIONER OF SOCIAL :
SECURITY,                  :
   Defendant.            :

**ORDER REMANDING CASE**

For the reasons set forth below, the decision of the Commissioner is reversed and this case is remanded for additional proceedings consistent with this order.

"A district court reviewing a final [] decision . . . [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981). The court may not make a de novo determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. See Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching a conclusion and whether the decision is supported by substantial evidence. See Johnson

v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

The plaintiff contends that the Administrative Law Judge ("ALJ"): "1) relied on misstatements of evidence to justify assigning less weight to the consistent opinions of two[1] treating physicians[2]; and 2) did not properly formulate Mr. Vandeusen's Residual Functional Capacity, in light of the numerous statements from Mr. Vandeusen's treating physicians and Mr. Vandeusen's own testimony, thereby making a finding for a higher level of physical capacity, and not determining Mr. Vandeusen's claim under the Grid rules." Pl.'s Mot. to Reverse ("Doc. No. 15-1") at 2.

The defendant argues that the ALJ properly evaluated the medical opinions and properly assessed the plaintiff's credibility, and that substantial evidence supported the ALJ's Decision. See Def.'s Mot. to Affirm (Doc. No. 16-2) at 3-8, 9-12, 12-13, respectively.

---

[1] Dr. Erik Beger's and Dr. Larry Barnett's opinions are at issue. This order addresses Dr. Beger's opinion only because it, standing alone, is a basis for remand. But the ALJ should address Dr. Barnett's opinion on remand.
[2] The plaintiff refers to chiropractor Barnett as a physician, but for purposes of the treating physician rule, he is considered an "other source[]". 20 C.F.R. § 404.1513(d)(1) (defining chiropractors as "other sources"). See n.3 below regarding consideration of "other sources".

2

The court concludes that remand is appropriate because the ALJ failed to properly apply the treating physician rule. "[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)).

"[I]f controlling weight is not given to the opinions of the treating physician, the ALJ . . . must specifically explain the weight that is actually given to the opinion." Schrack v. Astrue, 608 F. Supp. 2d 297, 301 (D. Conn. 2009) (citing Schupp v. Barnhart, No. Civ. 3:02CV103 (WWE), 2004 WL 1660579, at *9 (D. Conn. Mar. 12, 2004)). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Snell v. Apfel, 177 F.3d 128, 133-34 (2d Cir. 1999) (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)). These reasons must be stated explicitly and set forth comprehensively. See Burgin v. Asture, 348 F. App'x 646, 649 (2d Cir 2009) ("The ALJ's consideration must be explicit in the record."); Tavarez v. Barnhart, 124 F. App'x 48, 49 (2d Cir. 2005) ("We do not hesitate to remand when the Commissioner . . . do[es] not comprehensively set forth reasons for the weight

assigned . . . .") (internal quotation marks and citation omitted); Reyes v. Barnhart, 226 F. Supp. 2d 523, 529 (E.D.N.Y. 2002)("rigorous and detailed" analysis required).

In determining the amount of weight to give to a medical opinion, the ALJ must consider all of the factors set forth in § 404.1527(c): the examining relationship, the treatment relationship (the length, the frequency of examination, the nature and extent), evidence in support of the medical opinion, consistency with the record, specialty in the medical field, and any other relevant factors. See Schaal, 134 F.3d at 504 ("all of the factors cited in the regulations" must be considered to avoid legal error).

If the opinions are from medical sources other than "acceptable medical sources", the ALJ must still consider the opinions, apply the factors, and explain the weight given. See 20 C.F.R. § 404.1527(f).[3] Regardless of whether the opinion is from an acceptable medical source or an "other source", the ALJ's explanation should be supported by the evidence and be specific enough to make clear to the claimant and any subsequent reviewers the reasons and the weight given. See 20 C.F.R. §

---

[3] Pursuant to SSR 06-03p, when the ALJ considers 404.1527(c)(6) "other factors", the ALJ must consider "other sources" opinions. According to SSR 06-03p, the regulations do not explicitly address how to consider "other sources" opinions. However, SSR 06-03p provides that the 404.1527(c) factors can be applied and that the ALJ generally should explain the weight given to ensure a reviewer can follow the reasoning. Federal Register Notice Vol. 82, No. 57, page 15263 rescinded SSR 06-03p effective March 27, 2017. Thus, SSR 06-03p applies to the ALJ's decision, which is dated November 24, 2015.

4

404.1527(f)(2); SSR 96-2p (applicable but rescinded March 27, 2017, after the date of the ALJ's decision).

> [W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history "even when the claimant is represented by counsel or . . . by a paralegal." Perez, 77 F.3d at 47; see also Pratts, 94 F.3d at 37 ("It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must [] affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.'[. . . ].") (citations omitted).

Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999). See also Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118-19 (2d Cir. 1998) (holding that the ALJ should have sought clarifying information sua sponte because the doctor might have been able to provide a supporting medical explanation and clinical findings, that failure to include support did not mean that support did not exist, and that the doctor might have included it had he known that the ALJ would consider it dispositive).

> Gaps in the administrative record warrant remand . . . . Sobolewski v. Apfel, 985 F. Supp. 300, 314 (E.D.N.Y.1997); see Echevarria v. Secretary of Health & Hum. Servs., 685 F.2d 751, 755-56 (2d Cir. 1982). . . .
>
> The ALJ must request additional information from a treating physician . . . **when a medical report contains a conflict or ambiguity that must be resolved**, the report is missing necessary information, or the report does not seem to be based on medically acceptable clinical and diagnostic techniques. Id. § 404.1512(e)(1). When "an ALJ perceives **inconsistencies in a treating physician's report, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly**," Hartnett, 21 F. Supp. 2d at 221, **by making every reasonable effort to re-contact the treating source for clarification** of the reasoning of the opinion.

5

> Taylor v. Astrue, No. 07-CV-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008).

Toribio v. Astrue, No. 06CV6532(NGG), 2009 WL 2366766, at *8-*10 (E.D.N.Y. July 31, 2009)(emphasis added)(holding that the ALJ who rejected the treating physician's opinion because it was broad, "contrary to objective medical evidence and treatment notes as a whole", and inconsistent with the state agency examiner's findings had an affirmative duty to re-contact the treating physician to obtain clarification of his opinion that plaintiff was "totally incapacitated").

In determining whether there has been "inadequate development of the record, the issue is whether the missing evidence is significant." Santiago v. Astrue, 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011) (citing Pratts v. Chater, 94 F.3d 34, 37-38 (2d Cir. 1996)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

As to Dr. Beger, the ALJ's decision states:

> The claimant's treating provider, Erik Beger, M.D., provided a medical source statement in February 2014[4],

---

[4] The plaintiff seeks Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Although Dr. Beger's opinions relate to SSI benefits (for which the relevant time period is the date of application, i.e. 2/14/14, and the year that follows it), his records refer to the surgical recommendation and the insurance and obesity issues which the plaintiff notes and which were present in the record as early as 2008, and these are relevant to the question of whether he qualified for implicating DIB benefits during

6

> which noted that he had treated the claimant on nine visits in the past two years (Exhibit 10F). Dr. Beger opined that the claimant could sit, walk or stand for only two hours in an eight-hour workday and would miss four or more days per month due to his conditions (Exhibit 10F). While Dr. Beger is a treating source, **the opinion is inconsistent with the objective findings and the claimant's varied and robust activities. The record reflects the claimant treats for his arthritic conditions with noted improvement with medication and exercise with no mention of the need for assistive devices or limitations as noted in Dr. Beger's statement.** Therefore, Dr. Beger's opinion is given limited weight.

R. at 39 (emphasis added).

Thus, the ALJ gives Dr. Beger's opinion limited weight because first, it is inconsistent with the objective findings in the record, and second, it is inconsistent with the plaintiff's "varied and robust" activities.

As to objective findings in the record, the ALJ concludes that the plaintiff received only conservative treatment (i.e. "medication and exercise") and it was successful (i.e. "noted improvement"). Prior to articulating the conclusions stated above, the ALJ makes several references to conservative treatment the plaintiff received, and in each instance the Decision cites to exhibits that are in the record, as follows:

(1) "Conservative treatment of Motrin, weight loss and therapy exercises were recommended for treatment (Exhibit

---

the period from the onset date of March 1, 2008 through December 31, 2010, the date last insured.

7

1F/5). . . . . [Plaintiff] was noted to improve with conservative treatment (Exhibit 1F/14-17)." R. at 36.

(2) "[T]here is virtually no treatment for the claimant's degenerative knee conditions . . . prior to December 31, 2010, and only diet and exercise were recommended for treatment (Exhibit 4F/61-62, 6F and 13F)." R. at 37.

(3) "The claimant has undergone only conservative pain management since his alleged onset date, consisting of medications, physical therapy and chiropractic therapy with noted benefit (Exhibit 1F/5, 4F, 8F, 11F, 12F, and 14F)." R. at 38.

(4) "[T]here is no evidence of treatment for the claimant's knee issues with Dr. Ross (Exhibit 6F/1-3)." R. at 36.

However, the exhibits cited to by the ALJ also contain evidence that is consistent with Dr. Beger's opinion, and the ALJ makes no mention of that evidence in explaining why he chose to give limited weight to Dr. Beger's opinion.

Exhibit 1F/25 (at R. 338) reflects that the plaintiff was treated conservatively by Dr. George in 2006 and that knee pain and difficulty with routine activities, particularly work, increased.

Exhibit 1F/25 (at R. 338) reflects that in August of 2008 the plaintiff sought treatment from Dr. Martin Ross. Exhibits 1F/26 (at R. 339), 6F/2 (at R. 465) and 8F/78 (at R. 545)

8

reflect that in September 2008 Dr. Ross concluded that "the only reasonable answers" would "come from arthroscopic intervention" and noted that the plaintiff had to "think these things through" because of "self-pay" and financial concerns.

Exhibit 1F/27 (at R. 340) reflects that in January 2009 Dr. Ross noted that the plaintiff had "gone to a couple of clinic-type settings and to the State" to "get things to happen" and to "get coverage" but had been unsuccessful. Exhibits 4F/78 (at R. 441) and 8F/77 (at R. 544) reflect that Dr. Ross again discussed arthroscopic intervention versus arthroplasty, noted that plaintiff would consider it, and noted that the plaintiff had financial issues that impeded proceeding.

Exhibit 4F/62 (at R. 425) reflects that in December 2010 the plaintiff reported knee pain and was noted to have bilateral knee crepitus.

Exhibit 4F/59 (at R. 422) and 4F/85 (at R. 448) reflect that in February 2011 a history of degenerative joint disease of the knee was noted and that the plaintiff was treated for it every three months and diagnostic testing was ordered in 2012.

Exhibit 1F/4 (at R. 317) reflects that in February 2012 Dr. Lawrence Lefkowitz, an orthopedic surgeon, took note of the plaintiff's long-standing right knee pain and "money issues". Exhibit 1F/6 (at R. 319) reflects that in March the plaintiff's condition was "about the same" and that Dr. Lefkowitz "would

9

like to see if [the plaintiff] fails on conservative nonoperative treatment before proceeding with arthroscopy."

Exhibit 1F/17 (at R. 330) reflects that in May 2012 Dr. Lefkowitz focused on surgery and noted that the likelihood of long-term success was weight-related.

Exhibit 8F/17 (at R. 484) reflects that in 2013 Dr. Sujatha Kumar also "discussed surgery" with the plaintiff. Exhibit 8F/31 (at R. 498) reflects that in 2014 Dr. Kumar noted that the plaintiff "must" lose 50 pounds prior to surgery.

Exhibit 11F/1 (at R. 581) reflects that in 2015 the plaintiff had a follow-up with Dr. Beger for osteoarthritis. Exhibits 11F/1 (at R. 581) and 14F/29 (at R. 681) reflect that the plaintiff indicated that he had lost weight, and that Percocet provided some reduction in pain but the pain continued and increased with walking.

Thus, the Decision fails to comply with the requirement that if an ALJ gives a treating physician's opinion less than controlling weight, the ALJ's reasoning for doing so must be specific, explicit, comprehensive, rigorous and detailed, so there can be a meaningful review.

Also, an ALJ cannot reject an opinion without first attempting to fill any clear gaps, to resolve existing conflicts, and to clarify any ambiguities or inconsistencies. Here, the ALJ made no effort to contact Dr. Beger to clarify the

plaintiff's treatment plan, the impact of medications and exercise on the specific impairments at issue, the likelihood of deterioration despite favorable responses to conservative treatments, the implications of the fact that surgery had been recommended but was not possible due to financial and/or obesity issues, the likelihood of successful surgical intervention, or how the plaintiff's specific circumstances might affect his ability to work for a sustained period, 8 hours a day, 5 days a week.

As to the plaintiff's "varied and robust" activities, "it is well-settled that '[s]uch activities do not by themselves contradict allegations of disability,' as people should not be penalized for enduring the pain of their disability in order to care for themselves." Knighton v. Astrue, 861 F. Supp. 2d 59, 69 (N.D.N.Y. 2012)(remanded because ALJ prematurely found plaintiff's contentions not fully credible due to ability "to perform daily activities like caring for pets, preparing simple meals, driving a vehicle, and helping with household chores" and citing Woodford v. Apfel, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000) and Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) ("We have stated on numerous occasions that 'a claimant need not be an invalid to be found disabled' under the Social Security Act.")). On remand the ALJ should address the evidence the plaintiff relies on to argue that there was a significant

11

reduction in his activities, and that the description in the Decision is a mischaracterization.

Thus, the court finds that the correct legal principles were not applied in that the ALJ failed to specifically explain the weight given to the opinion of the treating physician and did not give good reasons for not crediting that opinion.

On remand the ALJ should apply the correct legal principles in evaluating Dr. Beger's opinion (analyze all factors, develop the record, inquire about evidentiary ambiguities, inconsistencies and conflicts); and address the parties' other arguments, including but not limited to re-evaluating the plaintiff's activities of daily living and Dr. Barnett's opinion; and address any material evidentiary omissions such as Dr. Barnett's missing treatment notes (see R. at 36).

For the reasons set forth above, Plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing (Doc. No. 15) is hereby GRANTED, and Defendant's Motion for an Order Affirming the Decision of the Commissioner (Doc. No. 16) is hereby DENIED. This case is hereby REMANDED to the Commissioner for proceedings consistent with this order.

The Clerk's Office is instructed that, if any party appeals to this court the decision made after this remand, any

subsequent social security appeal is to be assigned to the undersigned.

The Clerk shall close this case.

It is so ordered.

Dated this 10th day of September 2018, at Hartford, Connecticut.

>                   /s/AWT
>            Alvin W. Thompson
>         United States District Judge